UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM BRADLEY BELL and
TADE BELL,

      Plaintiffs,

v.                                        Case No.: 2:20-cv-309-JLB-NPM

ACE INSURANCE COMPANY OF
THE MIDWEST,

      Defendant.

## ORDER

Before the Court is the Motion for Remand filed by Plaintiffs William Bradley Bell and Tade Bell (collectively, "the Bells") on May 12, 2020. (Doc. 11). Defendant ACE Insurance Company of the Midwest ("ACE") filed a Response to Plaintiff's Motion to Remand on May 22, 2020, to which the Bells filed a Reply on May 29, 2020. (Docs. 13; 14). The Bells supplemented their Motion for Remand on June 1, 2020, and then ACE filed a Sur-Reply on June 5, 2020. (Docs. 15; 17).

On April 28, 2020, ACE removed this Hurricane Irma insurance coverage dispute originally filed in Florida state court to this Court. (Doc. 1.) The substance of the Bells' claim is not the focus of this Order. Instead, this Order addresses whether ACE's removal of this action to this Court was untimely. After careful review, this Court finds that ACE has proved by a preponderance of the evidence that ACE's removal of this action was within the 30 days prescribed by 28 U.S.C. § 1446(b)(3). Accordingly, as explained more fully below, the Bells' Motion to Remand is denied.

## BACKGROUND

This action involves an insurance dispute arising from damage to the Bells' home caused by Hurricane Irma. At the time of the Bells' alleged loss, the Bells had an insurance policy with ACE. (Doc. 1-1 at ¶¶ 5, 11-12.) The Bells reported the damage but ACE denied coverage. (Docs. 1-1 at ¶ 13; 11-1.) The Bells assigned the benefits under the policy to CMC Restoration, Inc. ("CMC"). Doc. 11-3 at ¶ 13) On November 18, 2018, CMC filed a declaratory judgment suit against ACE in state court. (Doc. 11-3.) The dispute in state court involved damages in the six figure range. (Doc. 11-5 at 4.) CMC later voluntarily dismissed the declaratory judgment action. (Doc. 13-10.)

On February 6, 2020, the Bells filed this breach of contract lawsuit against ACE in state court. (Doc. 1-1.) They served ACE on February 13, 2020. (Doc. 11-2 at 6.) Thereafter, ACE served discovery requests on the Bells. (Docs. 13-11; 13-12; 13-13). Before the Bells responded to the discovery requests, counsel for both parties conferred via email about the damages sought by the Bells and the validity of the Bells' assignment of benefits to CMC. (Doc. 11-7.) On April 17, 2020, the Bells served their discovery responses on ACE. Those responses included a copy of the revocation of the CMC assignment of benefits, an admission that the amount in controversy exceeded $75,000, and three repair estimates totaling several hundred thousand dollars in damages. (Docs. 13-2; 13-3; 13-4.) Eleven days after receiving the Bells' discovery responses (April 28, 2020), ACE removed this action to this Court. Two weeks later, (May 12, 2020), the Bells moved to remand to state court asserting that ACE's removal was untimely. (Doc. 11.)

## DISCUSSION

Under 28 U.S.C. § 1446(b), the notice of removal "shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading," or, "if the case stated by the initial pleading is not removable, … within 30 days after receipt by the defendant … of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(1), (3) (emphasis added). If assessing removal based on a later received paper, "the court considers the document . . . and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007). For a removal to be proper, documents and other papers filed in an action or provided in discovery "must contain an unambiguous statement" that the amount in controversy exceeds $75,000. *Id.* at 1213 n.63.

Here, the parties disagree as to the date ACE first learned that the amount in controversy exceeded the jurisdictional minimum of $75,000. The Bells argue that the 30-day period for removal began to run at the time ACE was served with the state court complaint (February 13, 2020) because ACE had pre-litigation knowledge of the property damage and because the state civil cover sheet alleged damages in excess of $75,000. (Docs. 11 at 3-11; 14; 15.) In the alternative, the Bells argue, the 30-day removal clock was triggered on March 23, 2020, the date on which counsel for the Bells informed counsel for ACE by email that the assignment of benefits to CMC was terminated. (Docs. 11 at 11; 14.) If ACE received notice of the amount in controversy

on either of these dates, its removal on April 28, 2020 would be beyond the 30 days allowed by the statute.

In response, ACE argues that the complaint lacked sufficient information to ascertain the amount in controversy. It contends that it was only able to ascertain the amount in controversy from the Bells' discovery responses served on April 17, 2020. (Doc. 13 at 11-18.) If ACE's view of the facts prevails, its removal on April 28, 2020 is timely.

### A. ACE's Pre-Litigation Knowledge and the Civil Cover Sheet

The Bells' first argument is that the 30-day clock began to run on the date on which ACE was served with the complaint based on ACE's pre-suit knowledge and the state action civil cover sheet. The complaint itself, however, fails to put ACE on notice of the amount in controversy because it only alleges damages in the amount of the state court jurisdictional minimum. (Doc. 1-1 at ¶ 1.) Nevertheless, the Bells argue that ACE knew the full extent of their damages from information it received as early as August 2019 in litigating the state declaratory judgment action with CMC. (Doc. 11 at 3-11.)

The Bells' reliance on ACE's pre-suit knowledge is misplaced. Although the Eleventh Circuit has yet to speak on this issue, "[e]very court of appeals that has addressed whether a court may consider a defendant's pre-litigation knowledge . . . to decide triggering of the 30-day removal period has held no." *Sullivan v. Nat'l Gen. Ins. Online, Inc.*, 3:17-cv-1387, 2018 WL 3650115, at *6 (M.D. Fla. Apr. 17, 2018) (citing ten appellate court decisions). "Those courts have adopted a bright-line rule

under which a court—to decide the triggering of the 30-day removal period—may look only at the pleading or any post-litigation 'other paper[]' from the plaintiff." *Id.* (internal citation omitted). "By its plain terms [§ 1446(b)] requires that if an 'other paper' is to trigger the thirty-day time period of the second paragraph of § 1446(b), the defendant must receive the 'other paper' only after it receives the initial pleading." *Vill. Square Condo. of Orlando, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 6:09-cv-1711, 2009 WL 4855700, at *3 (M.D. Fla. Dec. 10, 2009) (citing *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992)). Although ACE might have known of the Bells' damages before service of this suit, ACE's pre-suit knowledge did not provide ACE with a basis to remove.[1]

Likewise, the Bells' argument that the civil cover sheet triggered removal on February 13, 2020, fails. In its sur-reply (Doc. 17), ACE lists several district court decisions that conclude a civil cover sheet is not part of the initial pleading for

---

[1] The Bells argue that ACE's knowledge of the state declaratory judgment action satisfies the "other papers" requirement of § 1446(b) because the "other paper" can be something outside the four corners of the complaint and because it need not be a paper that came from the plaintiff. (Doc. 14 at 3.) But even if true, those assertions are beside the point. As discussed above, the state declaratory judgment action does not satisfy the "other paper" requirement *not* because it is outside the complaint and/or emanated from someone other than the Bells, but because of its *timing*. As the court in *Goldstein v. Market Realty Four, LLC*, No. 16-cv-60956, 2016 WL 5215024 (S.D. Fla. Sep. 21, 2016), explained, "the *pre-suit* demand, notice, bills, and records cannot be considered as part of [the plaintiff's] 'initial pleading' under Section 1446(b)(1)." *Id.* at *5 (emphasis in original). This is because "[t]he plain language of the removal statute requires that 'if an "other paper,"' such as these documents, 'is to start the thirty-day time period, a defendant must receive the "other paper" after receiving the initial pleading.'" *Id.* (quoting *Chapman*, 969 F.2d at 164, and citing as further support *Bender v. Mazda Corp.*, 657 F.3d 1200, 1204 n.2 (11th Cir. 2011), and *Lowery,* 483 F.3d at 1213).

purposes of 28 U.S.C. § 1446(b)(1). But even if a civil cover sheet is part of an initial pleading, the Bells did not serve the cover sheet on ACE. (Doc. 17 at 3.)

### B. Post-Filing E-mail Communications Between Counsel

The Bells' second argument is that the removal clock was triggered post-filing and service of the complaint when, on March 23, 2020, their counsel emailed ACE's counsel informing the latter that the assignment of benefits to CMC had been terminated. (Doc. 11 at 4, 7, 8-11.) ACE responds that the e-mail failed to sufficiently demonstrate the amount in controversy. (Doc. 13 at 9-11.)

On March 23, 2020, ACE's counsel wrote:

> We need to establish what damages are being sought by CMC and what damages are being sought by the Bells before we can have an intelligent conversation as to our position on potential settlement. According to CMC's affidavit filed in its attempt to collect monetary damages in a declaratory judgment suit, it is seeking at least $231,267.97. The Bells are seeking at least the jurisdictional floor of $30,000. I do not have information as to how these figures are calculated and to what extent they overlap. Thus, we issued discovery to all concerned. If you would like to short cut the process and let me know precisely what the Bells are seeking and how those damages are distinct from those sought by CMC, it would be greatly appreciated.

(Doc. 11-7 at 5.) The Bells' counsel responded:

> Absolutely. I will be providing you all the damages info plus personal contents and projected loss of use. It is my understanding you already have the roofing estimate.

(*Id.* at 4.) ACE replied:

> I do have a copy of the ServePro estimate and some limited communications requesting additional information. Previously I was looking in the CMC claim file which did not have more recent documents. There are no roofing

> estimates in my records. Hopefully, discovery responses from the Bells and CMC can untie this knot. I understand that you cannot speak on behalf of CMC. Is it your client's position that the CMC AOB is invalid or has been terminated?

(*Id.* at 3). The Bells' counsel answered, "Terminated." (*Id.*).

As is clear from these emails, the Bells' counsel did not convey unambiguously to ACE's counsel that the amount in controversy exceeded $75,000. Although ACE's counsel attempted to ascertain the amount in controversy, the Bells' counsel failed to answer the question directly and insisted that information about damages would arrive later. (*Id.* at 4-5.)

The Bells' argument that ACE knew the amount in controversy exceeded $75,000 by virtue of learning that the assignment of benefits had terminated is unconvincing. Even with this knowledge, ACE would only be speculating as to the value of the Bells' claim, especially considering that CMC's declaratory action remained pending at the time of the e-mail. (Doc. 13-10.) Moreover, while ACE conceded it had a "ServePro" estimate, this only provided for $7,557.20 in repairs. (Docs. 11-7 at 3; 13 at 9). This estimate, along with the terminated assignment of benefits, did not unambiguously demonstrate to ACE that the amount in controversy exceeded $75,000.

### C. The Bells' Discovery Responses

Discovery documents are considered "other paper" under the removal statute. *See Lowery,* 483 F.3d at 1213 n.62. In response to ACE's discovery requests, the Bells sent to ACE, among other things, a copy of the revoked assignment of benefits

between CMC and the Bells; an admission that the amount-in-controversy exceeded $75,000; and three repair estimates totaling over $300,000 in damage. (Docs. 13 at 7-8; 13-2; 13-3; 13-4.) It was not until ACE received these discovery responses on April 17, 2020 did ACE have unambiguous information that the amount in controversy exceeded $75,000. ACE removal less than 30 days later on April 28, 2020 was timely. (Docs. 1; 13-2; 13-3; 13-4.)[2]

## CONCLUSION

For the foregoing reasons, the Bells' Motion to Remand (Doc. 11) is **DENIED**.

**ORDERED** in Fort Myers, Florida, on September 10, 2020.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[2] Initially, ACE failed to comply with Local Rule 4.02(b), which requires the party effecting removal to file a copy of all the documents on file in the state court. *See* Local Rule 4.02(b). Nonetheless, the record shows ACE supplemented its removal on May 22, 2020 with the complete state court record. (Docs. 12; 12-3.)